10-3238.111-JCD                                             September 22, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MULTIUT CORPORATION and NACHSHON DRAIMAN, )<br>)<br>     Plaintiffs, )<br>)<br>     v. )<br>)<br>GREENBERG TRAURIG, LLP, )<br>)<br>     Defendant. ) | No. 10 C 3238 |

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the second amended complaint. For the following reasons, the motion is granted.

### BACKGROUND

This is a legal malpractice action brought by Multiut Corporation ("Multiut") and Nachshon Draiman (the CEO and controlling shareholder of Multiut) against Greenberg Traurig, LLP ("Greenberg"), which represented Multiut and Draiman in litigation relating to a business dispute with a third party, Dynegy Marketing & Trade ("Dynegy").

Late last year, we issued a memorandum opinion setting forth the background facts as alleged by plaintiffs:

> Multiut entered into a Natural Gas Sales Agreement (the "Agreement") with Dynegy in October 1995, pursuant to which Multiut would acquire natural gas from Dynegy. Multiut and Draiman also executed a guaranty of payment

for Dynegy's benefit. Years later, a dispute arose between Multiut and Dynegy regarding the amounts owed by Multiut under the Agreement, and the parties reached an impasse.

***The Dynegy Suit***

In October 2002, Dynegy filed suit (the "Dynegy Suit") against Multiut and Draiman here in the Northern District of Illinois. Dynegy sought damages from Multiut for breach of the Agreement and damages from both defendants on the guaranty. Dynegy also asserted fraudulent transfer and breach of fiduciary duty claims. It sought $15 million on the breach of contract and guaranty claims. The case was assigned to Judge Nordberg.

Multiut and Draiman retained Greenberg to represent them in the Dynegy Suit. They asserted a number of affirmative defenses as well as six counterclaims alleging that Dynegy had orally modified the Agreement, that it had breached a confidentiality agreement with Multiut, and that it had discriminated against Multiut by charging a higher price for gas than it had charged to other companies.

In September 2006, Dynegy filed a motion for summary judgment on Counts I and II of the complaint (its breach of contract and guaranty claims) and on all of Multiut's counterclaims. Greenberg filed a response on behalf of Multiut and Draiman. It is alleged in the instant action that Greenberg committed legal malpractice in several ways with regard to the response to the summary judgment motion.

In June 2008, Judge Nordberg issued a memorandum opinion and order entering summary judgment in favor of Dynegy on Counts I and II and on all of Multiut's counterclaims and awarding Dynegy $15,348,244.72 plus interest. Dynegy Mktg. & Trade v. Multiut Corp., No. 02 C 7446, 2008 WL 2410425 (N.D. Ill. June 11, 2008). . . .

***The Antitrust Suit***

In December 2004, Greenberg filed a separate antitrust action on behalf of Multiut against Dynegy (the "Antitrust Suit"), alleging violations of the Sherman Act, 15 U.S.C. § 1 et seq., in addition to common-law and statutory fraud. Dynegy was named as the sole defendant. The complaint alleged that Dynegy had conspired with a number of other entities to fix natural gas prices. Greenberg states in its brief that the Antitrust Suit is still pending as part of multidistrict litigation proceedings in the United States District Court for the District of Nevada.

Multiut Corp. v. Greenberg Traurig, LLP, No. 10 C 3238, 2010 WL 5018538 (N.D. Ill. Dec. 2, 2010) (footnote omitted). At the time we provided this summary of the underlying litigation, the Dynegy Suit was pending on appeal to the Seventh Circuit. Judge Nordberg's decision has since been affirmed in full. Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506 (7th Cir. 2011).

In our decision, which is discussed below, we denied plaintiffs leave to file a proposed first amended complaint, but gave them leave to file a revised first amended complaint. Plaintiffs have now filed a "Second Amended Complaint for Professional Negligence," which Greenberg moves to dismiss. Like the previous versions of the complaint, the current complaint contains two counts of professional negligence. Count I alleges that Greenberg committed legal malpractice in relation to the Dynegy Suit, and Count II alleges malpractice in relation to the Antitrust Suit.

**DISCUSSION**

Under federal notice-pleading standards, a complaint need not contain "detailed factual allegations," but it must have more than mere "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain sufficient facts to raise a plaintiff's right to relief above a "speculative" level, id. at 555, and the claim must be "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

The elements of a legal malpractice claim in Illinois are "(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages." Orzel v. Szewczyk, 908 N.E.2d 569, 575 (Ill. App. Ct. 2009). Because the "underlying theory in a legal malpractice cause of action is that the plaintiff client would have been compensated for an injury caused by a third party, absent negligence on the part of the client's attorney," in order to establish proximate cause a plaintiff "must essentially prove a case within a case, which means but for the attorney's negligence, the plaintiff would have prevailed in the underlying action." Id. at 575-76 (internal quotation marks omitted).

In our December 2010 opinion, we held that plaintiffs failed to state malpractice claims because their allegations of proximate cause and damages were lacking. Plaintiffs failed to adequately allege that they would have prevailed in the underlying litigation but for Greenberg's alleged conduct. With respect to Counterclaims II and V in the Dynegy Suit, plaintiffs alleged that Greenberg failed to disclose, develop, and present damages evidence, but

failed to allege that there actually was evidence of damages that Greenberg could have used and developed.

Greenberg contends that the second amended complaint suffers from the same defects. We agree. Plaintiffs have added some allegations to the complaint, but those allegations do not enable us to draw a reasonable inference that Greenberg is liable for professional negligence.

**Count I**

In Count I, plaintiffs allege that Greenberg negligently failed to do several categories of things in its representation of Multiut: (1) adequately depose Dynegy's damages expert, address the infirmities of the expert's opinions and conclusions, and raise a timely objection to the expert's summary report; (2) make appropriate and timely discovery disclosures and properly develop and present evidence of damages on Multiut's Counterclaims II and V, including expert analysis; (3) pursue a claim for fraudulent inducement in connection with the confidentiality agreement with Dynegy; and (4) raise the defense on summary judgment that the guaranty did not apply to Multiut's obligations that arose out of agreements other than the Agreement between Multiut and Dynegy. (Second Am. Compl. ¶¶ 92-101.)

As for Dynegy's damages expert, Count I still does not allege that plaintiffs would have prevailed but for the failure to "adequately" depose the expert or address or object to the

- 6 -

"infirmities" in his report. Plaintiffs state in vague terms what they consider to be a problem with the expert's calculations and allege that without proper deposition questioning they lacked "crucial testimony" to challenge the expert's opinions, Second Am. Compl. ¶¶ 53, 55, but fail to allege that they would have prevailed on Dynegy's case-in-chief, or on what basis, had Greenberg challenged the expert.

In its counterclaims in the Dynegy suit, Multiut alleged that Dynegy had breached a confidentiality agreement (Counterclaim II) and had discriminated against Multiut by charging a higher price for gas than it charged to its favored affiliated companies, Nicor Energy ("Nicor") and Illinova, in violation of the Robinson-Patman Act (Counterclaim V). Plaintiffs allege that Greenberg negligently failed to develop and offer evidence of damages on these counterclaims. We were unable to draw the inference of malpractice from plaintiffs' previous proposed complaint because it failed to allege that there actually *was* evidence of damages that Greenberg could have developed and presented. We described the problem as follows:

> We agree with Greenberg that plaintiffs must identify at least in general terms the evidence that Greenberg allegedly failed to develop. Plaintiffs respond that they "expressly allege" that Multiut lost customers and that Greenberg had prepared a memorandum describing the damages for discriminatory pricing, . . . but the proposed complaint contains only a bare assertion of lost customers; it fails to allege that there was indeed *evidence* of lost customers that Greenberg should have developed.

- 7 -

2010 WL 5018538, at *4.

In the second amended complaint, plaintiffs now allege that Multiut had letters from some customers indicating that they were switching to Nicor, and they attach samples of such letters to the complaint.[1] Greenberg contends that plaintiffs still have not identified evidence that existed that could have proved Multiut's damages on those claims. We agree. To prevail on either counterclaim, plaintiffs had to prove a causal connection between the alleged breach of the confidentiality agreement (Counterclaim II) or the alleged price discrimination (Counterclaim V) and the lost customers. In paragraph 42 of the second amended complaint, it is alleged in conclusory fashion that "[i]f [Greenberg] had properly investigated Multiut's claims, it would have developed sufficient evidence to demonstrate that Dynegy's discriminatory pricing or unlawful use of Multiut's confidential information or both had caused customers to switch from Multiut to Nicor Energy and Illinova." But there are no facts alleged in the complaint that allow us to draw a reasonable inference that a causal link did exist between Dynegy's alleged misconduct and the lost customers.

---

[1] Plaintiffs also attach two exhibits to their response to the motion to dismiss; they are e-mails from Greenberg attorneys that plaintiffs claim are part of the "ample and readily available evidence showing that customers were switching from Multiut to other suppliers." (Pls.' Resp. at 6.) Consideration of a motion to dismiss is limited to the pleading, and the second amended complaint does not attach or mention these e-mails. We decline to consider the exhibits, and in any event the e-mails do not assist plaintiffs because they do not indicate that there was evidence of a causal connection between Dynegy's conduct and Multiut's lost customers.

- 8 -

Under the Twombly/Iqbal pleading standard, "[t]he fact that the allegations undergirding a claim could be true is no longer enough to save a complaint from being dismissed; the complaint must establish a nonnegligible probability that the claim is valid." In re Text Messaging Antitrust Litig., 630 F.3d 622, 629 (7th Cir. 2010). "[T]he probability need not be as great as such terms as 'preponderance of the evidence' connote," id., but here there are no facts alleged that move the complaint into the realm of plausibility of entitlement to relief regarding Counterclaims II and V. For the same reasons, the allegations pertaining to the timing of the submission of Nachshon Draiman's affidavit are deficient because we are unable to infer that the affidavit could have included evidence of a causal link between Dynegy's alleged misconduct and lost customers.

Plaintiffs have added to the second amended complaint a new assertion of malpractice, an allegation that Greenberg "should have raised a claim that Dynegy fraudulently induced Multiut to enter into the Confidentiality Agreement based on the knowingly false promise that it would not disclose Multiut's confidential information to any other party and would only be used by Dynegy to evaluate whether it wanted to acquire Multiut." (Second Am. Compl. ¶ 100.) Greenberg points out correctly that under either a breach-of-contract or fraudulent-inducement theory, the alleged damages would have been the same, and plaintiffs could not have prevailed

without proving damages caused by the alleged misconduct. The allegations as to this theory of malpractice also lack but-for causation; plaintiffs have not identified evidence of damages that existed that would have allowed plaintiffs to prevail on such a claim.

Plaintiffs also allege that Greenberg was negligent in failing to raise the defense that the guaranty did not apply to Multiut's obligations that arose out of agreements other than the Agreement between Multiut and Dynegy. The complaint states:

> [Greenberg] negligently failed to raise any issue on summary judgment with respect [sic] Draiman's defense on the guarantee [sic] and only raised such a defense in a motion for reconsideration. If [Greenberg] had pointed out that some of the alleged obligations Dynegy had sued on did not arise out of the [Agreement], as required under the Guaranty, Draiman would have prevailed on at least a portion of Dynegy [sic] claim against him.

(Second Am. Compl. ¶ 101.) Greenberg argues that this defense, to which it refers as the "Exhibit B" defense, was considered and rejected by Judge Nordberg when he ruled on the motion for reconsideration, foreclosing the possibility that raising it earlier would have allowed plaintiffs to prevail. In their response, plaintiffs contend that the defense to which they refer in the complaint is different from the "Exhibit B" defense and that it is a "valid argument that Dynegy was seeking indemnification for payment on invoices for gas sold to it by entity [sic] that was not a party [sic] the guaranty agreement." (Pls.' Resp. at 13.) According to plaintiffs, Greenberg raised this argument only in

- 10 -

plaintiffs' reply brief on a motion for reconsideration, and Judge Nordberg therefore did not address it. We have reviewed Judge Nordberg's ruling on the motion for reconsideration, as well as the reply brief filed in support of the motion for reconsideration. Plaintiffs' brief did not treat this argument as a separate defense; the discussion was folded into the argument pertaining to "Exhibit B." Moreover, Judge Nordberg did not state or imply that he was disregarding the argument; rather, it appears that he treated it as part and parcel of the argument regarding Exhibit B, and rejected it. In any event, even if it was a separate defense, its precise nature is evident only from plaintiffs' response brief. They have in essence attempted to supplement the allegations of the complaint through their brief, which is not permissible. The nature of the defense that allegedly should have been raised by Greenberg is not alleged with sufficient detail in the complaint to have put defendants on notice of the claim. In addition, plaintiffs have failed to provide enough detail to permit us to reasonably infer that they would have prevailed on the defense.

Because Count I fails to state a claim for legal malpractice, it will be dismissed.

**Count II**

In our December 2010 opinion, we dismissed Count II because it did not contain sufficient allegations that Multiut would have prevailed on its antitrust claims against Dynegy and did not

- 11 -

adequately allege that Multiut suffered damages as a result of the alleged malpractice.

Plaintiffs have now added an allegation that Multiut would have been able to "participate in" settlements in the Antitrust Case "because such claims were meritorious and Multiut could and should have prevailed upon such claims." (Second Am. Compl. ¶ 108.) Again, these are carefully-worded allegations, but they do not assert anything more than the possibility of plaintiffs prevailing, which is not enough. Furthermore, plaintiffs still do not allege that they suffered damages. They do allege that Greenberg was "operating under a debilitating conflict of interest" when representing plaintiffs and that "all fees collected while under such conflict should be returned to Multiut," but Greenberg cites case law supporting the proposition that the payment of fees by itself does not constitute actual damages in a malpractice action. See Universal Mfg. Co. v. Gardner, Carton & Douglas, 207 F. Supp. 2d 830, 833-34 (N.D. Ill. 2002); Owens v. McDermott, Will & Emery, 736 N.E.2d 145, 157 (Ill. App. Ct. 2000).

Plaintiffs do not respond to these arguments; they essentially concede that they have failed to allege damages, and suggest that Count II is "premature" or "unripe." They ask that we stay the case as to Count II, or alternatively to permit Multiut to "withdraw Count II . . . until it ripens." (Pls.' Resp. at 15.) Plaintiffs' request, however, ignores the fact that they have

- 12 -

failed to correct the but-for causation defect that persists in the second amended complaint. Accordingly, Count II will be dismissed.

When we granted plaintiffs leave to file a new amended complaint in our previous opinion, we stated that it would be plaintiffs' "final opportunity to amend" the complaint. 2010 WL 5018538 at *5. Because plaintiffs have again failed to state claims for professional malpractice, this cause will now be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the second amended complaint [33] is granted, and plaintiffs' claims are dismissed with prejudice.

DATE:            September 22, 2011

ENTER:         _____
               John F. Grady, United States District Judge